UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TRAVIS HEEG, et al.,

    Plaintiffs,

v.

UNITED ELECTRICAL CONTRACTORS, INC.,

    Defendant.
_____/

Case No. 1:21-cv-796

Hon. Hala Y. Jarbou

**OPINION**

This is an action seeking damages under the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201, et seq., and Michigan's Workforce Opportunity Wage Act (WOWA), Mich. Comp. Laws § 408.411, et seq. Plaintiffs Travis Heeg, Dalton Parish, Andrew Crampton, Evan Kopke, Timothy Nolen, Richard Johnson, and Marius Richardson are or were employed by Defendant United Electrical Contractors, Inc. ("UEC") as electrical workers. Plaintiffs contend that UEC did not properly compensate them for time worked. Before the Court is Plaintiffs' motion to conditionally certify a collective action under the FLSA. (ECF No. 9.) The Court will grant the motion.

**I. BACKGROUND**

UEC, which has offices in Lansing and Livonia, Michigan, is an electrical contractor that works on construction sites throughout the State of Michigan. It employed Plaintiffs and other electrical workers, paying them on an hourly basis. There are three types of electrical workers employed by UEC: Apprentice Electricians, Journeymen Electricians, and Foremen. (*See* Compl.,

ECF No. 1, PageID.4; Peebles Decl. ¶¶ 3-4, ECF No. 15-2.)[1] Each type has its own job responsibilities and rate of pay.

Plaintiff Heeg worked for UEC as an Apprentice Electrician from November 2016 through November 2020. (Heeg Decl. ¶ 2, ECF No. 9-1.) Plaintiff Richardson worked for UEC as an Apprentice Electrician from January 2020 through October 2020. (Richardson Decl. ¶ 2, ECF No. 9-2.) Plaintiff Kopke worked for UEC as an Apprentice Electrician from May 2017 to February 2021. (Kopke Decl. ¶ 2, ECF No. 9-3.) Plaintiff Crampton worked for UEC as a Journeyman Electrician and Foreman from September 2016 to February 2021. (Crampton Decl. ¶ 2, ECF No. 9-4.) Plaintiff Parish worked for UEC as an Apprentice Electrician from March 2020 to March 2021. (Parish Decl. ¶ 2, ECF No. 9-5.) Plaintiff Nolen worked for UEC as a Journeyman Electrician and Foreman from January 2018 to January 2021. (Nolen Decl. ¶ 2, ECF No. 9-6.) Plaintiff Johnson worked for UEC as a Journeyman Electrician and Foreman from April 2013 to October 2020. (Johnson Decl. ¶ 2, ECF No. 9-7.)

Plaintiffs assert four violations of the FLSA and/or WOWA: (1) unpaid shop time; (2) undercompensated overtime pay due to a "per diem" policy; (3) unpaid training; and (4) unpaid print review.

**A. Shop Time**

In their affidavits, Plaintiffs contend that UEC required them to report to UEC's "shop" in Lansing several times per week in order to load materials and tools into UEC's company vehicle and then travel to the job site. UEC did not pay them for this time; UEC considered the time of their arrival at the jobsite as the start of their compensable workday. Similarly, at the end of the

---

[1] UEC asserts that there is an additional category of electrical worker called "Laborer," but its Vice President, Robert Peebles, avers that Laborers are "non-electrical workers" who "do not perform any electrical tasks." (Peebles Decl. ¶ 4.)

workday, UEC would require them to travel back to the shop and unload materials and tools. UEC would not pay them for the time traveling back to the shop or for the time unloading the vehicle.

### B. Per Diem

Plaintiffs also contend, and UEC acknowledges, that UEC had a policy of paying its electrical workers an extra $2 per hour as a "per diem" when working at a job site more than sixty miles from the shop. This per diem did not reimburse Plaintiffs for food and other expenses; it was simply an addition to their hourly pay. However, UEC did not include this extra pay in Plaintiffs' hourly rate when calculating overtime pay.

### C. Unpaid Mandatory Training

Plaintiffs contend that UEC required them to complete online training modules as a condition for their employment and did not compensate them for the time spent undergoing this training. To the extent Plaintiffs worked as Apprentice Electricians, Plaintiffs contend that they did not have a written apprenticeship agreement with UEC, and UEC did not employ them under an apprenticeship program that met the Department of Labor's requirements. *See* 29 C.F.R. § 785.32 (excluding time spent in a "bona fide apprenticeship program" that "substantially meets the fundamental standards" of the Department of Labor from compensable work time).

### D. Unpaid Print Review

Finally, Plaintiffs contend that UEC required electrical workers working as Foremen to review job prints and prepare for the week's activities over the weekend, without compensation.

Plaintiffs now ask the Court to conditionally certify this action as a collective action under the FLSA that includes a class of

> similarly situated individuals, known and unknown, who were employed by [UEC] as electricians, including Apprentices, Journeymen, and Foremen[], and who were deprived of overtime for hours worked in excess of forty hours a week over the course of the last three years.

(Pls.' Br. 3, ECF No. 9.)

## II. CONDITIONAL CERTIFICATION STANDARD

Under the FLSA, an employee can maintain an action "for and [on] behalf of himself . . . and other employees similarly situated." 29 U.S.C. § 216(b).

> Section 216(b) establishes two requirements for a representative action: 1) the plaintiffs must actually be similarly situated, and 2) all plaintiffs must signal in writing their affirmative consent to participate in the action. Similarly situated persons are permitted to opt into the suit. This type of suit is called "collective action." It is distinguished from the opt-out approach utilized in class actions under [Rule 23 of the Federal Rules of Civil Procedure].

*Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 546 (6th Cir. 2006) (internal citations and quotations marks omitted).

The threshold issue in the conditional certification inquiry is "whether plaintiffs have shown that the employees to be notified are, in fact, 'similarly situated.'" *Id.* If the plaintiffs meet their burden at this stage, the Court "may use its discretion to authorize notification of similarly situated employees to allow them to opt into the lawsuit." *Id.*

> Courts typically bifurcate certification of FLSA collective action cases. At the notice stage, conditional certification may be given along with judicial authorization to notify similarly situated employees of the action. Once discovery has concluded, the district court—with more information on which to base its decision and thus under a more exacting standard—looks more closely at whether the members of the class are similarly situated.

*Monroe v. FTS USA, LLC*, 860 F.3d 389, 397 (6th Cir. 2017) (internal citation omitted).

The FLSA does not define "similarly situated." The Court of Appeals has considered several factors to determine whether certification is appropriate. Those factors include the "'factual and employment settings of the individual[ ] plaintiffs, the different defenses to which the plaintiffs may be subject on an individual basis, [and] the degree of fairness and procedural impact of certifying the action as a collective action.'" *O'Brien v. Ed Donnelly Enters., Inc.*, 575 F.3d 567, 584 (6th Cir. 2009) (quoting 7B Wright, Miller, & Kane, Federal Practice and Procedure

§ 1807 at 497 n.56 (3d ed. 2005)), *abrogated on other grounds by Campbell-Ewald Co. v. Gomez*, 577 U.S. 153 (2016).  Also, plaintiffs can be similarly situated where their claims are "unified by common theories of defendants' statutory violations, even if the proofs of these theories are inevitably individualized and distinct." *Id.* at 585.

It is Plaintiffs' burden to show that conditional certification is warranted, but they only need to make a "'modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law.'" *Comer*, 454 F.3d at 547 (quoting *Roebuck v. Hudson Valley Farms, Inc.*, 239 F. Supp. 2d 234, 238 (N.D.N.Y. 2002)).

### III. ANALYSIS

#### A. Plaintiffs' Evidence

According to Plaintiffs' evidence at this stage, UEC has required each of them to perform uncompensated work loading tools and materials at the shop before traveling to the jobsite.  UEC also failed to properly compensate them for overtime hours worked because it did not include the "per diem" when calculating their regular rate of pay.  Also, it has required them to perform mandatory training and off-the-clock work without compensating them.  And to the extent UEC relies on an apprenticeship program to exclude training from compensated work, Plaintiffs assert that this program does not meet the Department of Labor's requirements and the Plaintiffs who worked as Apprentice Electricians did not sign agreements to participate in such a program.  Although the proofs will likely differ as to each individual, Plaintiffs' work environments appear to be substantially similar, and they share common theories of violations that likely apply to other electrical workers.

#### B. UEC's Response

First, UEC provides evidence purporting to refute each of Plaintiffs' claims, supported by a declaration of its Vice President, Robert Peebles.  (*See* Peebles Decl., ECF No. 15-2.)  For

5

instance, UEC asserts that its employees are generally responsible for recording, completing, and reviewing their timesheets. (*Id.* ¶¶ 13-15.) Consequently, time that is not reported will not be compensated.

As to shop time, UEC asserts that its policies prohibit employees from retrieving materials and tools from the shop and transporting them to the job site. (*Id.* ¶¶ 21-22.) UEC employs a shop manager and delivery drivers for that purpose. When electrical workers have performed these tasks and reported their work, they were compensated. (*Id.* ¶ 23.)

Regarding the per diem, UEC asserts that it conducted an audit for the three-year period at issue in this case and reimbursed its employees for the amounts it should have paid them had it used the per diem to calculate the regular rate. (*Id.* ¶ 19.)

With respect to the trainings, UEC provides evidence of signed agreements with the four named Plaintiffs who worked as Apprentice Electricians. UEC also contends that its program complies with the Department of Labor's and the State of Michigan's requirements. UEC funds a training program, but the apprentices are not required to participate in UEC's program. To the extent UEC requires its employees to take online training courses, it views the trainings as compensable time that should be recorded on the employee's timesheet. (*Id.* ¶¶ 26-27.)

Finally, to the extent Foremen or other electrical workers are given prints to review over the weekend, UEC contends that this time is compensable as long as it is recorded on the employee's timesheet. (*Id.* ¶ 24.)

UEC's evidence might be relevant for a summary judgment motion, but it is not helpful for resolving Plaintiffs' motion for conditional certification. UEC is effectively asking the Court to consider the merits of Plaintiffs' claims by disregarding Plaintiffs' affidavits in favor of its own evidence. That is not the relevant inquiry. "During this preliminary stage, a district court does not

6

generally consider the merits of the claims, resolve factual disputes, or evaluate credibility." *Waggoner v. U.S. Bancorp*, 110 F. Supp. 3d 759, 765 (N.D. Ohio 2015).  Indeed, discovery in this case is ongoing; it would be improper for the Court to accept UEC's evidence at face value before Plaintiffs have had an opportunity to test that evidence.

Next, UEC contends that Plaintiffs' evidence is "too conclusory, speculative and scant" to satisfy their burden.  (Def.'s Br. 11, ECF No. 15.)  The Court disagrees.  UEC cites cases in which the plaintiff(s) relied on the declarations of no more than one or two employees to speculate that there was a violation common to a larger class.  *See, e.g.*, *Sutka v. Yazaki N. Am., Inc.*, No. 17-10669, 2018 WL 1255767, at *9 (E.D. Mich. Mar. 12, 2018); *Swinney v. Amcomm Telecomms., Inc.*, No. 12-12925, 2013 WL 28063, at *8 (E.D. Mich. Jan. 2, 2013); *Demorris v. Rite Way Fence, Inc.*, No. 14-CV-13777, 2015 WL 12990483, at *4 (E.D. Mich. Mar. 30, 2015); *Shipes v. Amurcon Corp.*, No. 10-14943, 2012 WL 995362, at *10 (E.D. Mich. Mar. 23, 2012); *see also Gallagher v. Gen. Motors Co.*, No. 19-11836, 2020 WL 3481649, at *4 (E.D. Mich. June 26, 2020) (declarations by four employees regarding the conditions of thousands of contractors spread throughout the country).  Those are not the circumstances here.

UEC also contends that Plaintiffs are not similarly situated among themselves or with other electrical workers because they occupied different positions with different rates of pay and different duties at different jobsites.  None of those factors significantly undermine Plaintiffs' case for conditional certification.  The different rates of pay simply mean that different plaintiffs might be entitled to different amounts of damages.  It is not clear how the different duties and jobsites has any bearing on how UEC compensated each of them with regard to training, the per diem, or shop time.  While it is true that only Apprentice Electricians would be impacted by UEC's alleged failure to maintain an appropriate apprenticeship training program, those employees would still

have the other violations in common with the class. It would not be difficult to segment the apprentice-specific claims from the others. The same is true of the claims by the plaintiffs who worked as Foremen and thus, are the only ones required to review prints on weekends. The fact that some electrical workers might have suffered more violations than others does not persuade the Court that they are not similarly situated.

Finally, UEC argues that there will be a conflict between the Foremen and the other electrical workers because the Foremen are responsible to track and verify the timesheets submitted by the others. However, UEC cites no precedent in which such a conflict warrants denial of conditional certification of a collective action. This is not a putative class action under Rule 32, in which conflicts between named and unnamed class members are an important consideration. And in any case, it is ultimately UEC's responsibility to properly supervise and compensate its employees for their work.

## IV. CONCLUSION

In summary, the Court is satisfied that Plaintiffs have established their burden of showing that conditional certification is warranted. Accordingly, the Court will grant their motion insofar as it seeks that certification.

Plaintiffs' motion also asks the Court to require UEC to provide a complete list of individuals employed by UEC as electrical workers in the last three years. The Court will defer that request to the discovery process.

Finally, Plaintiffs ask the Court to approve the notice attached to their motion, which will be sent to potential class members. UEC provides no reason to reject the notice. The Court will approve it.

An order will enter consistent with this Opinion.

Dated:  May 10, 2022                                        /s/ Hala Y. Jarbou
                                                            HALA Y. JARBOU
                                                            UNITED STATES DISTRICT JUDGE